592 P.2d 1332 (1978)
Jane WOOD, Plaintiff-Appellant,
v.
Charles Foster ROWLAND, M.D., Lutheran Hospital and Medical Center, a Colorado Non-Profit Corporation, and James C. Kisicki, M.D., Defendants-Appellees.
No. 77-600.
Colorado Court of Appeals, Div. I.
November 16, 1978.
As Modified On Denial of Rehearings December 28, 1978.
Certiorari Denied April 2, 1979.
*1333 Elliott & Greengard, Richard D. Greengard, Denver, for plaintiff-appellant.
Zarlengo, Mott & Zarlengo, John C. Mott, Denver, for defendant-appellee Charles Foster Rowland, M.D.
Marshall Quiat, Hansen, Anstine & Hill, Robert W. Hansen, Denver, for defendant-appellee Lutheran Hospital and Medical Center.
Yegge, Hall & Evans, Paul D. Cooper, Denver, for defendant-appellee James C. Kisicki, M.D.
BERMAN, Judge.
Plaintiff filed suit against defendants alleging medical malpractice on the part of the two doctors and negligence on the part of the hospital in the care of plaintiff's husband. She appeals from a judgment in favor of the hospital directed at the close of the evidence and a judgment in favor of the two doctors entered after the return of a jury verdict. We affirm the verdict in favor of the doctors and reverse as to the hospital.
Plaintiff lists as error: (1) the refusal of the trial court to allow plaintiff to present the testimony of Dr. Lawrence Repsher in either direct or rebuttal testimony; (2) the refusal of the court to allow a registered nurse to testify; and (3) the granting of the directed verdict on behalf of the hospital.

I.
No pretrial conference was held in this case. Dr. Repsher was not named in the original list of witnesses. On November 9, 1976, seven days prior to trial, plaintiff filed a supplemental pretrial memorandum pursuant to Local Rule 21 of the First Judicial District, which provides:
"At least 30 days prior to trial, counsel for each party shall supply all other counsel with a list of names of witnesses intended to be called at the trial, together with their names, addresses, and a brief statement of the nature of the testimony of each. Not less than ten days before trial, such information as to any additional witnesses not known at the time of such previous listing must be furnished opposing counsel. Any witness listed may be called by any party.
. . . . .
These rules are in lieu of a pretrial conference.. . ."
Plaintiff's supplemental memorandum contained the following supplement to witnesses previously listed:
"Any doctor or doctors who examined, treated or ran or supervised tests performed during the treatment of the decedent, Cecil E. Wood, at Lutheran Hospital *1334 and Medical Center during the period from April 24, 1973, through April 27, 1973. Such witnesses will testify on standards of care, causation, and all other matters, including care, treatment and the necessity of treatment of the decedent, Cecil E. Wood."
Defendants' counsel first learned at the commencement of the trial that Dr. Repsher had been subpoenaed to testify. This was six days prior to his being called; however, during this six-day period, Dr. Repsher was unavailable until the weekend prior to his scheduled testimony, when he could be reached by telephone. No summary of Dr. Repsher's testimony was made available to the defendants, and their first opportunity to interview him occurred the morning of his scheduled appearance. Noting that numerous doctors had provided care and treatment to Mr. Wood during the course of his illness, and upon objection by defendants' counsel, the court refused to allow Dr. Repsher to testify because his name had not appeared on the pretrial list of witnesses.
C.R.C.P. 16(d)(3), relative to pretrial procedure, provides:
"If a party fails or refuses to name the witnesses he intends to call at trial or fails to state the general substance of the testimony he intends to elicit from each witness, he may be precluded thereafter from calling such witnesses at the time of trial or eliciting such testimony from another witness not designated for such testimony."
As stated in Estate of Gardner v. First National Bank, 31 Colo.App. 361, 505 P.2d 50 (1972):
"The purpose of such pre-trial disclosure of witnesses is to enable all parties to prepare for trial. . . . Under C.R. C.P. 16, wide discretion is vested in the trial court to determine whether a witness who has not been listed on the pre-trial order and whose name has not been disclosed to the opposing party may testify."
In as much as the statement contained in plaintiff's "supplemental statement" was not timely and was so broad as to be equivalent to no statement at all, plaintiff failed to comply with Local Rule 21. Thus, under the circumstances of this case, whether to allow Dr. Repsher to testify on direct examination was within the discretion of the court. See Short v. Downs, 36 Colo.App. 109, 537 P.2d 754 (1975).
There is also no merit in plaintiff's argument that Dr. Repsher should have been allowed to testify on rebuttal. There is no transcript of any testimony in the record which was presented by defendants after plaintiff rested her case. Consequently, we cannot determine what evidence there was which his testimony would tend to rebut and thus, since we are bound by the record see Noice v. Jorgenson, 151 Colo. 459, 378 P.2d 834 (1963), we find no error.

II.
Plaintiff next contends that the trial court erred in holding that registered nurse Miller was not qualified to testify as an expert witness.
The determination of whether a witness is competent to give opinion evidence as an expert is a question addressed to the discretion of the trial court, and "unless there is an abuse of that discretion, the court's ruling will not be disturbed." Baird v. Power Rental Equipment, Inc., Colo., 552 P.2d 494 (1976). We conclude that the trial court abused that discretion here.
Mrs. Miller was graduated from St. Joseph's Hospital School of Nursing in 1963 and worked as a "charge" nurse at that hospital for approximately three years. She was employed as an office nurse from 1966 to 1968. She was not employed from 1968 to May 1973. From May 1973 to the time of the trial (November 1976) she was employed as a "float" nurse at General Rose Hospital. The incident in question occurred April 7, 1973. Mrs. Miller testified that as a result of her training and experience she was familiar with the standards of nursing care in the Denver metropolitan area.
*1335 The trial court concluded that Mrs. Miller was not qualified because as of April 1973, she had been employed in only one hospital and the policies at that hospital may have differed from those at the hospital in question here. The court observed that doctors, on the other hand, are permitted to testify as to standards of care in hospitals in general, including hospitals in which they have not practiced, because they practice in many hospitals. Therefore they are able to draw conclusions as to general community standards.
"`An expert is one who has superior knowledge of a subject, and is therefore able to afford the tribunal having the matter under consideration a special assistance, and his knowledge may have been acquired by professional, scientific, or technical training or by practical experience in some field of human activity, conferring on him an especial knowledge not shared by men in general.'" Stone v. People, 157 Colo. 178, 401 P.2d 837 (1965) (emphasis added). Mrs. Miller's education and experience are not common to the average person, and the offer of proof, which we summarize below, makes it clear that her testimony would have aided the jury in determining whether or not the nurses in this case were negligent.
The offer of proof shows that Mrs. Miller would have opined that, based on her review of the pertinent hospital records, the nurses on duty failed to perform in accordance with reasonable standards of nursing care in the following particulars. First, after the patient had been examined by a doctor, one nurse failed to report to the doctor the patient's history of a heart condition and that he was taking medication for it. At the same time this nurse also failed to report vomiting by the patient. Second, the nurses failed to perform their duties properly by not taking the patient's vital signs as ordered by the doctor and, when the vital signs were finally taken, by not entering them on the patient's chart. Third, the patient's vital signs were not taken, as they should have been, before he was injected with Demerol. Finally, the testing done in the emergency room did not meet the standard of reasonable nursing care.
The effect of the trial court's holding is to prohibit any nurse who has worked in only one hospital from testifying as to the standards of nursing care existing in the community. While such a rule may be correct as to administrative standards or procedures employed by hospitals, the offer of proof shows that Mrs. Miller's testimony concerned professional nursing standards rather than administrative standards or procedures. What a hospital may require of its nurses has little, if anything, to do with the obligations that specialized training and experience may impose on nurses in the community. Therefore as to nursing standards, we reject this rule.
The practice of nursing is a highly regulated profession in this state, see § 12-38-201 et seq., C.R.S. 1973, and therefore, the applicable standard of care is that of the reasonable professional. See Valentin v. LaSociete Francaise de Bienfaisance Mutuelle, 76 Cal.App.2d 1, 172 P.2d 359 (1946). Cf. Artist v. Butterweck, 162 Colo. 365, 426 P.2d 559 (1967). See generally Note, Acts of Diagnosis by Nurses and the Colorado Professional Nursing Practice Act, 45 Den.L.J. 467 (1968); Note, A Revolution in WhiteNew Approaches in Treating Nurses as Professionals, 30 Vand.L.Rev. 839 (1977). This minimum standard is not affected by standards which may be adopted by various hospitals. The fact that she had worked in only one hospital would affect, if anything, the weight of her testimony but not its admissibility. See Stone v. People, supra.

III.
Plaintiff also contends that the court should have submitted to the jury the issue of Lutheran Hospital's negligence in caring for Mr. Wood. Because of our holding above regarding the testimony of Mrs. Miller, the directed verdict in favor of the hospital must be reversed.
*1336 Since the offer of proof shows that Mrs. Miller's testimony would not have concerned the defendant doctors, the jury verdict in their favor must be affirmed.
The judgment is affirmed in part and reversed in part, and the cause is remanded for further proceedings in accordance with the views expressed herein.
SMITH, J., concurs.
COYTE, J., dissents and would grant Appellees petition for rehearing.
COYTE, Judge, dissenting:
I dissent.
I agree with the majority opinion where it states that:
"It is within the discretion of the trial court to determine the competence of an expert witness to testify." Martin v. Bralliar, 36 Colo.App. 254, 540 P.2d 1118 (1975).
Here, the problem is that the nurse was never qualified to testify as an expert witness. She was first called and examined by plaintiff's counsel. Defendants objected that proper foundation had not been laid and extensively examined the witness. Then she was again examined by plaintiff's counsel, and in the course of the examination, she was asked:
"You don't know the standards of nursing care in other hospitals, the standards of procedures of nurses in other hospitals that you have [not] worked in do you?"
She replied, "No."
Furthermore, during questioning relative to being qualified as an expert, she gave a number of inconsistent answers.
Merely because the witness was a registered nurse does not automatically qualify her as an expert. The offer of proof is interesting, but before she can testify to the matters set forth in the offer of proof she should first be determined to be an expert. This the trial court understandably refused to do. Accordingly, I find no basis for this court to conclude that the trial judge abused his discretion in refusing to allow this nurse to testify as an expert, and I would therefore affirm the judgment.