Charles STONE and David Tyrrell, Plaintiffs-Appellants,

v.

Lee CAROSELLI and Keith Caroselli d/b/a the Vail Factory, Defendants-Appellees.

No. 81CA0448.

Colorado Court of Appeals, Div. I.

Oct. 14, 1982.

Head, Moye, Carver & Ray, Pamela A. Ray, Susan M. Rogers, Denver, for plaintiffs-appellants.

Stewart H. Brown, Vail, for defendants-appellees.

COYTE, Judge.

In an action for the breach of an exclusive distribution contract, plaintiffs, Charles Stone and David Tyrell, (distributors) appeal the trial court judgment awarding damages to defendants, Lee and Keith Caroselli, (manufacturers). We affirm.

The evidence revealed that the manufacturers, the owners of a store in Vail, had a product, a miniature ski trail sign, which they wanted to introduce into the market. The distributors entered into a contract with the manufacturers in June of 1977 which provided that the distributors would be the exclusive distributor of the signs for a period of two years. As consideration for the exclusive distribution rights, distributors paid the manufacturers $5,000.

After the agreement went into effect, the manufacturers became increasingly dissatisfied with distributors' performance, culminating in a conversation in August of 1978 in which one of the distributors allegedly told the manufacturers that the distributors would not continue to devote time to promoting the product. The manufacturers treated this statement as a repudiation of the contract and a few days later hired a salesman to promote the product.

The manufacturers also went to various ski shows in October and November to promote the product. When they returned on November 19, distributors demanded that they be allowed to make sales to the outlets which the manufacturers had set up at the ski shows: The manufacturers refused but accepted an order from distributors for signs for distributors' shops and for another store in Breckenridge. The distributors, however, called the next day and cancelled the Breckenridge order.

On November 27, 1978, the manufacturers notified distributors by letter that they considered the agreement null and void because of distributors repudiation of the contract in August 1978.

The distributors instituted this action alleging that the manufacturers had breached the contract by refusing to sell signs to them and by selling the signs to third parties. The manufacturers counterclaimed alleging that distributors had breached the contract by failing to promote the sale of the signs.

The trial court found that distributors had breached the contract and awarded damages to the manufacturers of $15,433.43 after prorating credit for the initial $5,000 paid for the exclusive distributorship.

The distributors first contend that in light of the provision of the agreement which allowed the distributors discretion in determining the number and location of outlets, the trial court erred in finding that they had an implied duty of best efforts in the performance of the contract. We disagree.

The contract is governed by the provisions of § 4–2–306(2), C.R.S.1973. That statute provides:

"A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes, *unless otherwise agreed,* an obligation by the seller to use his best efforts to supply the goods and by the buyer to use best efforts to promote the sale." (emphasis added)

The agreement between the parties provided that the number and location of outlets was to be within the sole discretion of the distributors. The distributors argue that that provision should be interpreted to mean that the parties had agreed that the distributors did not need to use their best efforts to promote the product.

■ This provision, however, by its terms, expressly vests the distributors with discretion to designate only the number and location of outlets. This paragraph and the balance of the agreement are silent as to the distributor's duty to promote the product and expand the market. Consequently, the best efforts requirement of § 4–2–306(2), C.R.S.1973, was not negated by agreement of the parties, and remained as an obligation of the distributors. *See Tri-City Electric Ass'n v. City of Gillette,* 584 P.2d 995 (Wyo.1978).

■ Since the evidence supports the trial court's findings that the distributors had not used their best efforts to expand the market and promote the product, we will not disturb its findings on appeal. *Linley v. Hanson,* 173 Colo. 239, 477 P.2d 453 (1970).

■ The distributors next contend that the trial court erred in finding that they repudiated the contract in August 1978. We disagree.

The manufacturers testified that in August 1978 one of the distributors approached them in a bar and told them that they would have to sell the signs because the distributors were not going to waste their time selling signs when they were making $300,000 a year. The trial court found that distributor's statement was a repudiation of the contract and that the manufacturers were justified in cancelling the contract and subsequently hiring a salesman to sell the signs. The evidence supports this finding by the trial court.

■ The distributors next contend that even if there was a repudiation, the trial court erred in not finding that the manufacturers had breached the contract when they hired a salesman without encouraging the distributors to retract their repudiation or awaiting further performance by the distributors. We disagree.

Section 4–2–610, C.R.S.1973, allows an aggrieved party to resort "to any remedy for breach" following a repudiation. One of the remedies available to an aggrieved party is to cancel the contract. Section 4–2–703(f), C.R.S.1973. Consequently, here, the trial court did not err in finding that the manufacturers were justified in cancelling the contract.

Plaintiffs next contend that the trial court erred in admitting parol evidence to explain the terms of the agreement. We disagree. The evidence objected to consisted of manufacturers' testimony as to the distributors' promise to "hit the road" to promote the product before they entered into the contract. Distributors contend that the contract as written was unambiguous and consequently no parol evidence was admissible.

■ Although the terms of an unambiguous integrated contract may not be contradicted by parol evidence, here, since the contract was silent as to the efforts required of the distributors, the trial court could properly allow evidence to explain the obligation of the distributors' implied duty to market and promote the product. *See Macgregor v. McReki, Inc.,* 30 Colo.App. 196, 494 P.2d 1297 (1971) Consequently, the evidence in question was properly admitted.

The distributors next contend that the trial court erred in qualifying several witnesses as experts. We disagree.

■ The trial court has discretion to rule upon the qualifications of expert witnesses and unless that discretion is abused its decision will not be disturbed on appeal. *Baird v. Power Rental Equipment, Inc.,* 191 Colo. 319, 552 P.2d 494 (1976).

■ Here, all of the witnesses found by the trial court to be qualified as experts had extensive experience in the promotion and marketing of ski related products. Although they understandably had not dealt with the new product which was at issue, the individual experience of each of the experts was sufficient to qualify them as experts in the marketing of ski products. Consequently, the trial court did not abuse its discretion in qualifying them as experts. *Gardner v. General Motors Corp.,* 507 F.2d 525 (10th Cir.1974).

We also reject the distributors' contention that the trial court erred in allowing

the experts to give their opinions based upon incomplete hypothetical questions.

Colorado Rules of Evidence 705 and 703 allow an expert to give an opinion without prior disclosure of the underlying facts or data upon which he bases his opinion, and allow an expert to give an opinion based upon facts or data made known to him at or before the hearing.

Here, the opinions given by the experts were based upon hypothetical questions made known to the trial court and were limited to the areas covered by the hypothetical questions. Consequently, the trial court did not err in permitting the experts to give opinions based upon these hypothetical questions.

Nor do we find any merit to the distributors' contention that the damages assessed by the trial court were remote and speculative and hence improperly awarded.

The evidence in support of the manufacturers claim for damages consisted of expert testimony as to the number of signs the manufacturers could sell based upon market tests conducted by the salesman. The court evaluated the testimony of the experts and based upon this testimony, estimated that the manufacturers could have made sales of approximately one-half the number the experts had estimated they could if distributors had performed their duties under the contract. The distributors argue that the expert testimony was insufficient to establish the damages with sufficient certainty. This contention is, however, without merit.

Here, manufacturers contracted for the distributors to promote the product and expand the market. Since the distributors failed to perform these duties, damages to the manufacturers in the form of lost profits were foreseeable. Hence, the manufacturers were entitled to recover those damages even though the exact amount of that recovery was difficult to ascertain. *Irish v. Mountain States Telephone & Telegraph Co.*, 31 Colo.App. 89, 500 P.2d 151 (1972).

Accordingly, as the manufacturers offered sufficient testimony in the form of expert opinion to substantiate the claim for lost profits, the trial court's findings as to the amount of damages will not be disturbed on review. *Cooper v. Hollis,* 42 Colo. App. 505, 600 P.2d 109 (1979); *Irish v. Mountain States Telephone & Telegraph Co., supra.*

Finally, the distributors contend that since the contract had been rescinded, the trial court erred in not returning the full amount of the consideration which they had paid to the manufacturers. However, the premise of this argument is in direct contravention of the trial court's finding that the distributors repudiated the contract and, thus, is without merit.

The distributors' remaining assignments of error are without merit.

Judgment affirmed.

ENOCH, C.J., and VAN CISE, J., concur.